UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

| | |
|---|---|
| IN RE:<br><br>THOMAS PHILIP REYNOLDS and<br>ANGELA FAYE REYNOLDS,<br><br>Debtors. | CASE NO. 5:14-bk-50061<br><br>CHAPTER 11<br><br><br>JUDGE FRANK W. VOLK |
| DONNA L. BRANNON,<br><br>Plaintiff,<br>v.<br><br>THOMAS PHILIP REYNOLDS and<br>ANGELA FAYE REYNOLDS,<br><br><br>Defendants. | ADVERSARY PROCEEDING NO.<br>5:14-ap-5013 |

**MEMORANDUM OPINION AND ORDER**

Pending is Plaintiff Donna L. Brannon's motion for summary judgment. Ms. Brannon prosecutes this adversary proceeding seeking a determination that a debt owed by Defendants Thomas Philip Reynolds and Angela Faye Reynolds is nondischargeable pursuant to sections 523(a)(2)(A), (a)(4), and (a)(6) of the Bankruptcy Code.

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). The Court has jurisdiction pursuant to 28 U.S.C. § 157 and 28 U.S.C. § 1334.

I.

WOCO Oil, Inc. ("WOCO") sold diesel fuel to J.L. Brannon, Inc. ("J.L. Brannon") beginning in 2008. *Exh. 2 to the Motion, State Court Complaint*, p. 1. As part of the transactions,

Ms. Brannon, the Treasurer for J.L. Brannon, completed a "credit application" on behalf of J.L. Brannon. *Id.* Reynolds Oil Inc. ("Reynolds Oil") was employed by J.L. Brannon to transport the fuel from WOCO to J.L. Brannon's West Virginia customers. *Id.* The original procedure was for WOCO to provide the location of the fuel to, and invoice, J.L. Brannon. J.L. Brannon would then provide the fuel location to Reynolds Oil. *Id.* As the relationship progressed, J.L Brannon began simply notifying Reynolds Oil that it needed fuel from WOCO, and Reynolds Oil would then contact WOCO for the fuel location. *Id.*

At some point, Reynolds Oil began acquiring fuel from WOCO for its own business and customers. *Id. at 1-2.* While J.L. Brannon allowed Reynolds Oil to acquire agreed-upon amounts on J.L. Brannon's account with WOCO, Reynolds Oil began ordering fuel for its own use on J.L. Brannon's account without first obtaining consent from J.L. Brannon. *Id.* When Reynolds Oil failed to pay for this fuel, WOCO invoiced J.L. Brannon in the amount of $200,000. *Id.* This unexpected invoicing forced Ms. Brannon to loan J.L. Brannon $200,000 from her personal retirement fund. *Id.*

J.L. Brannon demanded payment of these monies from Reynolds Oil, but reimbursement was not received. *Id.* Consequently, in January of 2012, WOCO instituted an action in the Circuit Court of Kanawha County against Ms. Brannon and J.L. Brannon (the "State Court Action"). Ms. Brannon in turn filed a Third-Party Complaint (the "Third-Party Complaint") against the Reynolds and Reynolds Oil, with whom they are associated. The Third-Party Complaint alleged that the Reynolds, through Reynolds Oil, defrauded Ms. Brannon out of approximately $200,000. Ms. Brannon alleged that misconduct led to the State Court Action. Ms. Brannon additionally alleged in the Third-Party Complaint that Reynolds Oil caused her financial

and severe emotional distress due to the threats of insolvency she faced and the disruption of her retirement planning and "ability to enjoy life." *Id.*

The Reynolds and Reynolds Oil did not answer the Third-Party Complaint. *The Motion, p. 2.* Ms. Brannon thus moved for default judgment in the State Court Action. *Id.* Prior to entry of default judgment, the parties settled the claims alleged in the Third-Party Complaint ("Agreed Order"). *Exh. 3 to the Motion.* The Agreed Order awarded Ms. Brannon judgment in the amount of $200,000, plus the amount of any recovery obtained against her by WOCO. *Id.* In the Agreed Order, the Reynolds and Reynolds Oil admitted the allegations in the Third-Party Complaint. *Id.*

The Defendants filed their chapter 11 petition on March 24, 2014 (case no. 5:14-bk-50061). A Chapter 11 Plan has yet to be filed in the case. On August 10, 2015, the U.S. Trustee moved to convert. In lieu of conversion, the Defendants agreed to file all delinquent monthly operating reports, bring current the quarterly fees owed to the U.S. Trustee, and liquidate their remaining real estate for the benefit of creditors by March 2016.

On June 24, 2014, Ms. Brannon commenced this adversary proceeding (docket no. 1). Defendants answered on July 24, 2014 (docket no. 4). Following discovery, Ms. Brannon moved for summary judgment. The matter is ripe for disposition.

## II.

**A.  Governing Standard**

Federal Rule of Civil Procedure 56, made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 7056, authorizes summary judgment only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c), Fed. R. Bankr. P. 7056. The moving party bears the burden. *Emmett v. Johnson*, 532 F.2d 291, 297 (4th Cir. 2008) ("When a party has submitted sufficient evidence to support its request for summary judgment, *the burden shifts to the nonmoving party* . . . .") (emphasis added); *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315 (4th Cir. 1993). Once the moving party has made a prima facie showing of its right to judgment as a matter of law, the nonmoving party must go beyond the pleadings and demonstrate that there is a genuine issue of material fact which precludes summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

**B.  Analysis**

Plaintiff seeks a nondischargeability determination under 11 U.S.C. § 523. A presumption exists that all debts owed by the debtor are dischargeable unless the party contending otherwise proves nondischargeability. 11 U.S.C. § 727(b). The purpose of this "fresh start" is to protect "honest but unfortunate" debtors. *Bosiger v. US Airways, Inc.*, 510 F.3d 442, 448 (4th Cir. 2007). Courts should narrowly construe exceptions to discharge against the creditor and in favor of the debtor. *Kubota Tractor Corp. v. Strack (In re Strack)*, 524 F.3d 493, 497 (4th Cir. 2008) (quoting *Foley & Lardner v. Biondo (In re Biondo)*, 180 F.3d 126, 130 (4th Cir. 1999)). The

burden is on the creditor to prove the exception to discharge by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 287–88 (1991); *Kubota*, 524 F.3d at 497.

### *1. Res Judicata*

Ms. Brannon contends that the Reynolds are barred by the Agreed Order from re-litigating issues regarding dischargeability. The doctrine of *res judicata*, or claim preclusion, prohibits re-litigation of "further claims by parties or their privies based on the same cause of action" if a final decision has already been rendered. *Brown v. Felsen*, 442 U.S. 127, 131 (1979) (*quoting Montana v. United States*, 440 U.S. 147 (1979)). The Supreme Court has held, however, that *res judicata* is inapplicable in the bankruptcy nondischargeability context. *Felsen*, 442 U.S. at 139-39 ("[A] bankruptcy court is not confined to a review of the judgment and record in the prior state-court proceedings when considering the dischargeability of respondent's debt."); Bankruptcy Law Manual § 2:29 (5th ed.) ("*Brown* is generally recognized as a "narrow" exception to the general rule that claim preclusion applies in bankruptcy."); *see also* Kelly C. Porcelli, *Preclusive Effect of Pre-Petition State Court Judgments in Nondischargeability Proceedings*, 6 St. John's Bankr. Research Libr. No. 25, at 3 (2014). In a footnote, the Supreme Court in *Felsen* acknowledged that its decision applied to "res judicata only, and not the narrower principle of collateral estoppel." *Id.* at 139 n.10. The Supreme Court has since permitted application of collateral estoppel principles to nondischargeability determinations. *Grogan*, 498 U.S. 279.

Ms. Brannon relies upon *Nash County Bd. of Education v. Biltmore Co.* to support the application of *res judicata* here. The *Nash* decision, however, does not address nondischargeability concerns, nor does it involve a bankruptcy court at all. *See Nash County Bd. of Education v. Biltmore Co.*, 640 F.2d 484 (4th Cir. 1981). The decision in *Felsen* thus controls.

5

*Res judicata* principles have no bearing on the Agreed Order. Ms. Brannon is consequently not entitled to summary judgment on *res judicata* grounds. In the event Ms. Brannon intended to rely upon collateral estoppel principles, the Court analyzes the matter below.

### 2. Collateral Estoppel

Collateral estoppel prohibits re-litigation of issues already adjudicated by a valid and final order of another court. *Sartin v. Macik*, 535 F.3d 284, 287-88 (4th Cir. 2008). As noted, the Supreme Court's decision in *Grogan* permits use of the preclusion doctrine in the nondischargeability context. *Grogan*, 498 U.S. at 284 n.11. In assessing the applicability of collateral estoppel, the bankruptcy court applies the law of the tribunal entering the prior judgment. *Sartin*, 535 F.3d at 287; *Pahlavi v. Ansari (In re Ansari)*, 113 F.3d 17, 19 (4th Cir. 1997).

The Agreed Order was entered by a West Virginia circuit court. West Virginia law thus controls the collateral estoppel determination. Under West Virginia law, collateral estoppel applies when the following elements are met:

> 1) the issue previously decided is identical to the one presented in the action in question; 2) there is a final adjudication on the merits of the prior action; 3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and 4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*State v. Miller*, 450 S.E.2d 114, 120 (W. Va. 1995); *Donham v. Walters (In re Walters)*, Adv. Proc. No. 10-93, 2011 Bankr. LEXIS 2147, *10 (Bankr. N.D. W.Va. June 6, 2011); *Jackson v. Harris (In re Harris)*, Adv. Proc. No. 08-13, 2008 Bankr. LEXIS 2329, *10 (Bankr. N.D. W.Va. Sept. 15, 2008).

The Court first analyzes issue identity under each of the nondischargeability sections Ms. Brannon relies upon, namely, subsections 523(a)(2)(A), 523(a)(4), and 523(a)(6).

a.   11 U.S.C. § 523(a)(2)(A)

Section 523(a)(2)(A) exempts from discharge debts incurred through "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). Under §523(a)(2)(A), "the false representations giving rise to the debt must have been knowingly and fraudulently made," or, in other words, they must have involved moral turpitude or intentional wrong. 4 Alan N. Resnik & Henry J. Sommer, *Collier on Bankruptcy* ¶ 523.08[d] (16th ed. 2009); *In re Reecher*, 514 B.R. 136, 158 (Bankr. D. Md. 2014) ("In the context of nondischargeability, however, exceptions to discharge for fraud require 'positive fraud, or fraud in fact, involving moral turpitude or intentional wrong . . . and not implied fraud, or fraud in law, which may exist without the imputation of bad faith or immorality.'") (quoting *Neal v. Clark*, 95 U.S. 704, 709 (interpreting the Bankruptcy Act of 1867 predecessor section to section 523(a)(4)).

Not only must the fraud be knowing, but the opposing party must have justifiably relied on the false representation. *Collier on Bankruptcy* ¶ 523.08[d]. In other words, the question is whether the "falsity of the representation . . . [would] have been readily apparent to the individual to whom it was made. This is a less exacting standard than 'reasonable reliance' . . . ." *Id.* Thus, to prevail under § 523(a)(2)(A), Ms. Brannon must show by a preponderance of the evidence that the Reynolds (1) made a false representation; (2) knew that the representation was false; (3) intended to deceive; (4) produced the victim's justifiable reliance on the representation; and (5) proximately caused damage. *SG Homes Assocs., LP v. Marinucci*, 718 F.3d 327, 334 (4th Cir. 2013); *Boyuka v. White (In re White)*, 128 Fed. Appx. 994, 998 (4th Cir. 2005) (*citing Grogan*, 498 U.S. at 286).

As noted, Ms. Brannon contends the Agreed Order forecloses any inquiry here into the merits of nondischargeability. The Agreed Order, however, simply notes that "Third-Party Defendant's [sic] [(Reynolds Oil, Thomas Reynolds, and Angela Reynolds)] admit, and do not dispute the allegations contained in Third-Party Plaintiff Donna Brannon's complaint and have consented to have Judgment entered against them, jointly and severally." *The Motion, Exh. C, p. 2*. The Agreed Order says nothing of the Reynolds' mental states nor does it address Ms. Brannon's justifiable reliance, if any. *See id.*

It is true that the Third-Party Complaint includes a modicum of conclusory allegations touching on the outer boundaries of fraud. For example, the pleading provides, *inter alia*, that "Third Party Defendant concealed each of the transactions from Donna Brannon," "Reynolds Oil company knew that it was unable to pay for the product it was purchasing," and "[e]ach of the transactions was dishonest and fraudulent, and part of a fraudulent scheme and/or conspiracy . . . ." Noticeably absent are the factual underpinnings giving rise to the alleged fraud. *See the Motion, Exh. B, paras. 61-63*. The Court will not impute "moral turpitude" or "intentional wrong" to the Reynolds, absent a specific finding of the same by the Kanawha Circuit Court. For these reasons, the Court finds that there is no identity of issues between the State Court Action and the allegations under § 523(a)(2)(A) in this adversary proceeding.

b. 11 U.S.C. § 523(a)(4)

Section 523(a)(4) excepts from discharge debts arising from "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). This section encompasses four types of debts: fraud while acting in a fiduciary capacity, defalcation while acting in a fiduciary capacity, embezzlement, and larceny. There is no evidence or assertion in either the Agreed Order or the Third-Party Complaint that the Reynolds were acting in a

8

fiduciary capacity. According to the Supreme Court, "the term 'fiducuary' is not to be construed expansively, but instead is intended to refer to 'technical' trusts. *Quaif v. Johnson*, 4 F.3d 950, 953 (11th Cir. 1993) (citing *Davis v. Aetna Acceptance Co.*, 293 U.S. 328 (1934)). The Court will therefore consider only embezzlement and larceny as possible section 523(a)(4) predicates.

Under § 523(a)(4), embezzlement is "the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." *Harrold v. Raeder (In re Raeder)*, 399 B.R. 432, 439 (Bankr. N.D. W.Va. 2009) (*quoting Miller v. J.D. Abrams Inc. (In re Miller)*, 156 F.3d 598, 602 (5th Cir. 1998)) (internal quotation marks omitted). Unlike larceny, embezzlement occurs when "the original taking of the property was lawful, or with the consent of the owner." *Raeder*, 399 B.R. at 439. Some bankruptcy courts have held that, to demonstrate embezzlement, a plaintiff must show: 1) property owned by another which is rightfully in the possession of the defendant; 2) that the defendant appropriated the property for personal use; and 3) that the appropriation occurred with fraudulent intent or by deceit. *See generally Sandalon v. Cook*, 141 B.R. 777 (Bankr. M.D. Ga. 1992).

Ms. Brannon does not allege the fuel the Reynolds and Reynolds Oil procured in her name was obtained lawfully. In fact, she emphatically asserts to the contrary in the Third-Party Complaint, namely, that the Reynolds and Reynolds Oil, "without first notifying Donna Brannon and against Donna Brannon's express prohibitions, obtained products from Woco on J.L. Brannon, Inc.'s account." *The Motion, Exh. B, p. 7*. The Third-Party Complaint elaborates further, noting that "[h]ad Donna Brannon known that Reynolds was engaging in each of these transactions

9

. . . Donna Brannon would have specifically forbidden the transaction from occurring."[1] *Id.* Further, the Agreed Order nowhere mentions embezzlement. *The Motion, Exh. C, p. 3.*

Absent an allegation that the Defendants obtained the fuel from WOCO lawfully, the embezzlement requirements of § 523(a)(4) were not met in the State Court Action and cannot be met in the instant adversary proceeding through collateral estoppel.

Next, larceny is defined as "the fraudulent and wrongful taking and carrying away of the property of another with intent to convert such property to the taker's use without the consent of the owner." *Credit Experts, LLC v. Santos (In re Santos)*, Adv. Proc. No. 11-1680, 2012 Bankr. LEXIS 3076, *19 (Bankr. E.D. Va. July 2, 2012) (*quoting In re Criswell*, 52 B.R. 184, 202 (Bankr. E.D. Va. 1985)). It occurs only when "felonious intent . . . existed at the time of the taking." *Raeder*, 399 B.R. at 439. Courts have interpreted the term "theft" coextensively with larceny. *See Santos*, 2012 Bankr. LEXIS at *21 (Listing illustrative cases therein).

Nowhere in the Third-Party Complaint or the Agreed Order is there any mention of either larceny or theft. Thus, there exists no finding of theft or larceny by the state court that can be used for collateral estoppel purposes in the instant matter. Although the Agreed Order says generally that Defendants "admit . . . the allegations contained in Third-Party Plaintiff Donna Brannon's complaint . . .," that opaque language appears insufficient to impute "felonious intent" to the Reynolds. The omission gives rise to the absence of an identity of issues between the State Court Action and nondischargeability as larceny under § 523(a)(4).

---

[1] While the Third-Party Complaint accuses Defendants of "embezzle[ing] $200,000.00 from Donna Brannon" and asserts that Defendants "are liable to Donna Brannon . . . based upon fraud, breach of contract, unjust enrichment, conversion, embezzlement, and for contribution," the term embezzlement is left undefined and is, as noted above, at odds with the relevant factual allegations in the Third-Party Complaint.

c. 11 U.S.C. § 523(a)(6)

Section 523(a)(6) excepts from dischargeability debts incurred by "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6) (2012). Generally, § 523(a)(6) applies to torts, but conversion can sometimes fall under § 523(a)(6). *Lewis v. Lowery (In re Lowery)*, 440 B.R. 914, 928 (Bankr. N.D. Ga. 2010) (Hagenau, J.); (4 Alan N. Resnik & Henry J. Sommer, *Collier on Bankruptcy* ¶ 523.12 (16th ed. 2009). A finding of nondischargeability requires more than "negligent, grossly negligent, or reckless conduct." *Duncan v. Duncan (In re Duncan)*, 448 F.3d 725, 729 (4th Cir. 2006). Rather, a plaintiff must show that the conversion was both willful and malicious. *Lowery*, 440 B.R. at 928. "Willful" requires deliberate or intentional acts, while "malicious" refers to acts that are "wrongful and without just cause or excessive even in the absence of personal hatred, spite, or ill will." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998); *Nestorio v. Associates Commer. Corp. (In re Nestorio)*, 250 B.R. 50, 57 (D. Md. 2000) (quoting *St. Paul Fire & Marine Ins. Co. v. Vaughn*, 779 F.2d 1003, 1008 (4th Cir. 1985)); S. REP. NO. 95-989, at 79 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5865; H.R. REP. No. 95-595, at 365 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6320. Additionally, engaging in an intentional act "does *not* necessarily mean that [the debtor] acted willfully and maliciously for purposes of § 523(a)(6)." *Duncan*, 448 F.3d at 729 (emphasis added). Importantly, some courts have found that the legislative history counsels that only injury resulting from "deliberate or intentional acts *of the debtor*" is nondischargeable under § 523(a)(6). *See, e.g., In re Eggers*, 51 B.R. 452, 453 (Bankr. E.D. Tenn. 1985) (emphasis in original).

The Third-Party Complaint accuses the Reynolds of conversion and specifically alleges that their behavior was "malicious, willful, intentional, and in knowing disregard for Donna

Brannon." *The Motion, Exh. B, p. 7.* There is nothing other than conclusory and limited statements, however, to illustrate the Reynolds' mental states. The Third-Party Complaint does not list any West Virginia common law or Code section under which conversion should be evaluated. The Court is simply unable at this point to evaluate whether there is an identity of issues. The mere incantation of "conversion" in the Third-Party Complaint carries no independent meaning here without specific reference to the requirements of West Virginia law.

Based upon the foregoing discussion, no identity of issues exists between the Third-Party Complaint and any of the nondischargeability sections pled in Ms. Brannon's complaint. It is thus unnecessary to further evaluate the application of collateral estoppel to the bankruptcy nondischargeability questions presented herein.

### III.

Ms. Brannon requests the Court to declare a debt of $200,000 nondischargeable based on the *res judicata* effect of a prior state court judgment. Binding precedent teaches, however, that *res judicata* does not apply to state court judgments in the bankruptcy nondischargeability context. That fact alone suffices to deny summary judgment.

Neither does collateral estoppel establish nondischargeability as a matter of law. At the gateway, the Court is unable to ascertain an identity of issues. The Third-Party Complaint and the Agreed Order are simply insufficient to bear the weight attributed them by Ms. Brannon, especially when the bedrock "fresh start" policy is at stake. Thus,

**IT IS ORDERED** that Ms. Brannon's motion for summary judgment be, and is hereby, **DENIED.**

The Clerk's Office shall serve a copy of this written opinion and order on Plaintiff, Plaintiff's Counsel, Defendants, Defendants' Counsel, and the United States Trustee.

DATED: DEC 09 2015

_____
Frank W. Volk
United States Bankruptcy Judge